**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BYRON ARNOLD and KIMBLY ARNOLD, | Case No.: 1:21-cv-1182 JLT SKO |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | (Doc. 5) |
| BAY FINANCE COMPANY LLC, aka AQUA FIN., and QUANTUM 3 GROUP LLC, | ORDER GRANTING LEAVE TO AMEND |
| Defendants. | |

Byron Arnold and Kimbly Arnold signed a purchase agreement for a water filter, for which they would make monthly payments. Plaintiffs assert the defendants acted unlawfully in seeking to collect a debt related to the water filter and made "false claims." (*See* Doc. 1 at 12, 22, 25.)

Defendants[1] contend Plaintiffs are unable to state claims for violations of the Fair Debt Collection Practices Act, Fair and Accurate Credit Transactions Act, and defamation. (Doc. 5.) Defendants seek dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (*Id.*) Plaintiffs did not oppose the motion. The Court finds the matter suitable for decision without oral arguments, and no hearing date will be set pursuant to Local Rule 230(g) and General Order 618. For the reasons set forth below, the motion to dismiss is **GRANTED**, and the complaint is dismissed with leave to amend.

---

[1] Defendants assert that Aqua Finance, Inc. and the Bay Finance Group, Inc. are separate entities, and were erroneously identified by Plaintiffs collectively as "Bay Finance Company LLC aka Aqua Fin." (Doc. 5 at 1; *see also* Doc. 9.)

1

## I.   Background and Procedural History

Plaintiffs allege they "signed [a] sales contract to purchase a[] water filter at the price of $5990.00" on February 12, 2016. (Doc. 1 at 12.) Plaintiffs assert they were "to pay $87.00 a month until the loan was paid in full." (*Id*.) In exhibits attached to the complaint, it appears Plaintiffs purchased the water filter from AquaPro Elite Systems. (*Id.* at 14, 19.) Plaintiffs were informed that AquaPro Elite Systems may assign the contract to Aqua Finance, Inc. (*Id.* at 14.) Plaintiffs believe their installment contract was "transferred or sold to Bay Finance on March 1, 2016." (*Id.* at 25.)

Plaintiffs assert that Bay Finance "move[d] the account from never late to collection" in January 2017. (Doc. 1 at 12.) Plaintiffs contend Bay Finance reported a "high balance [amount] of $12,073." (*Id.*) Plaintiffs assert this caused a credit score increase of 25-49 points. (*Id.*)

At some unknown time, it appears the installment contract was further assigned to Quantum 3 Group. Plaintiffs contend Quantum did not "properly notify[]" them of "attempts to collect a debt," and attached a lien to their property, without notice, on October 19, 2019. (Doc. 1 at 12, 22.) According to Ms. Arnold, Plaintiffs did not learn of the lien until March 23, 2020, when they attempted to refinance their home. (*Id.* at 25.) In addition, Plaintiffs assert Quantum "attached for a service line to the property… for an embellished amount of $10,000" on or about March 11, 2020. (*Id.* at 12.)

Plaintiffs went through bankruptcy proceedings and assert Aqua Finance concealed the fact that it "had transferred or terminated their rights to the contract." (Doc. 1 at 22.) In a letter dated March 30, 2020, to an agent of Quantum and Aqua Finance, Ms. Arnold indicated her belief that Aqua Finance submitted a false claim to the bankruptcy court. (*Id.*)

On May 12, 2021, Plaintiffs filed a complaint in Stanislaus County Superior Court, Case No. SC21000387. (Doc. 1 at 6.) Plaintiffs seek to hold the defendants liable "for computer defamation and for a violation of the FACTA" related to reporting inaccurate information to the consumer reporting agencies. (*Id.* at 12.) In addition, it appears Plaintiff seeks to hold defendants liable for unlawful "attempts to collect a debt." (*Id.*) Defendants filed a notice of removal on August 5, 2021, thereby initiating the matter before this Court. (Doc. 1.) Defendants filed the motion to dismiss now pending before the Court on August 12, 2021. (Doc. 5.)

///

## II. Motion to Dismiss

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993).

The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted).

Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740. (1976). A court must construe the pleading in the light most favorable to the plaintiff and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III. Discussion and Analysis

Defendants contend the "Complaint is confusing at best and contains no separately delineated and pleaded causes of action." (Doc. 5 at 3.) However, Defendants ascertain that the allegations are suggestive of the following claims: (1) violation of the Fair Debt Collection Practices Act, (2) violation of the Fair and Accurate Credit Transactions Act, and (3) defamation. (*Id.* at 3, 4.) Defendants contend Plaintiffs offer no more than "conclusory statements" to support these claims, and "[t]he sparse and disconnected facts that can be gleaned from the Complaint do not give rise to any plausible claim against Defendants." (*Id.* at 3.)

### A. Fair Debt Collection Practices Act

Under the provisions of the Fair Debt Collection Practices Act ("FDCPA"), debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). In general, to establish a violation of the FDCPA, Plaintiffs must allege: (1) they were consumers (2) who were the object of a collection activity arising from a consumer debt, and (3) the defendant is a "debt collector," (4) who engaged in an act prohibited by the FDCPA. *See Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004).

#### 1. Pleading deficiencies

As an initial matter, the facts alleged are insufficient to support a conclusion that Bay Finance—or Aqua Finance, which Defendants report is a separate entity— acted as a "debt collector." The FDCPA defines the term "debt collector" as including: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). To adequately plead this claim, a plaintiff must allege specific facts showing that a defendant is a "debt collector" within the meaning of the statute. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013). Here, there are no facts alleging Bay Finance took action to collect a debt, or regularly engaged in such actions. For this reason, Plaintiffs fail to state a claim for a violation of the FDCPA against Bay Finance. Similarly, Plaintiffs do not allege facts to support a determination that

Aqua Finance or Quantum regularly took action to collect the debts of owed to another or that the principal purpose was to collect debts.  Accordingly, the facts alleged against Aqua Finance and Quantum are also insufficient.

### 2. Timeliness of the claim

Even if Plaintiffs alleged facts to show the defendants were debt collectors, Defendants contend Plaintiffs' claim under the FDCPA is untimely.  (Doc. 5 at 6.)  Plaintiffs allege Quantum "did not "properly notify[]" them of "attempts to collect a debt," and attached a lien to their property on October 19, 2019.  (Doc. 1 at 12, 22.)  It also appears Plaintiffs believe Quantum took action with a "service line" on March 11, 2020, although the allegations in the complaint are unclear as to what occurred.  (*See id.* at 12.)  Further, in the letter dated March 30, 2020, to an agent of Quantum and Aqua Finance, Ms. Arnold also indicated a belief that Aqua Finance submitted a false claim to the bankruptcy court, because the claim was made after the company "had transferred or terminated their rights to the contract."  (*Id.* at 22.)

Importantly, any claims against the defendants for violations of the FDCPA were required to be brought "within one year from the date on which the violation occurs." 15 U.S.C. §1692k(d).  The Supreme Court determined this language of the FDCPA "unambiguously sets the date of the violation as the event that starts the one-year limitations period." *Rotkiske v. Klemm*, 140 S.Ct. 355, 360 (2019). Because the alleged wrongful lien from Quantum was attached on October 19, 2019, any civil action must have been filed no later than October 19, 2020.  To the extent Plaintiffs base their claim against Quantum for the "service line," it also must have been filed no later than March 11, 2020.  Finally, any claim against Aqua Finance related to actions taken in the bankruptcy proceedings must have been filed prior to March 30, 2021.[2]

Because Plaintiffs filed their complaint on May 12, 2021, the complaint was filed after the one-year statute of limitations imposed by the FDCPA for each of the alleged wrongful acts identified. Accordingly, a claim under the FDCPA based upon these acts fails as a matter of law.

---

[2] It is very likely that any alleged wrongful act occurred prior to the date Kimbly Arnold wrote the letter contesting the actions of Quantum and Aqua Finance.  Nevertheless, because Plaintiffs do not identify the specific dates, the Court applies the letter date for purposes of this motion and evaluating whether the claim is time-barred.

### B. Fair and Accurate Credit Transactions Act

In 2003, Congress passed FACTA, Pub. L. No. 108-159, 117 Stat. 1952, as an amendment to the Fair Credit Reporting Act, "in part to combat identity theft." *See Simonoff v. Expedia, Inc.*, 643 F.3d 1202, 1204 (9th Cir. 2011). Pursuant to this purpose, FACTA requires certain information to be disclosed by consumer reporting agencies and forbids disclosure of other identifying information. *See generally* 15 U.S.C. § 1681c.

Plaintiffs allege "the defendant is liable… for a violation of the FACTA having a responsibility to report accurate information to the CRA and those who request the information regarding the Plaintiff (sic) credit worthiness." (Doc. 1 at 12.) However, Plaintiffs do not clearly identify which defendant they believe violated FACTA. In addition, it is not clear whether any defendant may be held liable under FACTA, which "only applies to consumer reporting agencies." *See Dorado v. Shea Homes Ltd P'ship*, 2011 WL 3875626, at *13 (E.D. Cal. Aug. 31, 2011); *see also Kakogui v. American Brokers Conduit*, 2010 WL 1265201, *5 (N.D. Cal. Mar.30, 2010). To the contrary, from the minimal allegations, it appears Plaintiffs believe the unidentified defendant provided "information *to* the CRA," which suggests Defendants were not acting as consumer reporting agencies. (*See* Doc. 1 at 12, emphasis added.) Regardless, Plaintiffs fail to identify any provision they believe Defendants violated, much less allege facts to support the claim. Consequently, as Defendants argue, the allegations are insufficient to support a claim under FACTA.

### C. Defamation

Plaintiffs seek to hold the defendants liable "for computer defamation." (Doc. 1 at 12.) Although "computer defamation" is not a cause of action, California law provides a claim "defamation" may be made for the injury to an individual's reputation for false written or spoken statements. *See Bowles v. Constellation Brands, Inc.*, 444 F. Supp.3d 1161, 1172 (E.D. Cal. 2020); *see also* Cal. Civ. Code § 44 (indicating defamation may be effected by either libel or slander).

Pursuant to California law, defamation "involves the intentional publication of a statement of fact that is false, unprivileged, and has a natural tendency to injure or which causes special damage." *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999); *see also Bowles*, 444 F. Supp.3d at 1172. "Publication means communication to some third person who understands the defamatory meaning of

the statement and its application to the person to whom reference is made." *Smith*, 72 Cal. App. 4th at 645. Whether a published statement "is reasonably susceptible to a defamatory interpretation is a question of law for the trial court." *Id*. at 647.

### 1. Pleading deficiencies

Defendants contend Plaintiffs fail "to state a plausible claim for defamation" because "[t]he Complaint does not state which Defendant allegedly made what statement or how any such statement may be false." (Doc. 5 at 8.) As Defendants observe, the allegations are insufficient to determine what statements Plaintiff believed were made, or by whom. Without additional information, the Court is unable to determine whether the statement was made by an agent of the entities, whether a publication occurred, or whether the statement was privileged. Thus, Plaintiffs fail to state a claim for defamation against any of the defendants.

### 2. Timeliness of the claim

Defendants contend any claim for defamation is also time-barred. (Doc. 5 at 8.) In California, claims for defamation are subject to a one-year statute of limitations. Cal. Code Civ. Proc. § 340(c); *see also Shively v. Bozanich*, 31 Cal. 4th 1230, 1246 (2003) ("the statute of limitations for defamation … requires that an action be filed within one year of accrual of the cause of action"). Causes of action for defamation accrue at the time of publication. *Shively*, 31 Cal. 4th at 1247; *see also Preas v. Watchtower Bible & Tract Soc'y of N.Y.*, 2015 WL 672152, at *3 (E.D. Cal. Feb. 17, 2015) ("Under California law, defamation claims are subject to a one-year statute of limitations, meaning they must be brought within one year of publication of the defamatory statement or they are time-barred from being heard in court").

Even assuming Plaintiffs alleged facts sufficient to support their claim of defamation, it appears the claim may be barred by the statute of limitations. Plaintiffs contend actions taken by Bay Finance occurred in January 2017, before the installment contract debt was assigned to Quantum. (*See* Doc. 1 at 12.) To the extent the defamation claim is based upon the reporting of an embellished (or false) debt amount by Quantum, Plaintiffs assert this occurred on March 11, 2020. Because Plaintiffs initiated this action by filing a complaint more than a year later on May 12, 2021, the claim—if, in fact, it is based upon either of these alleged acts—is untimely.

## IV.     Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations, internal quotation marks omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publishing*, 512 F.3d 522, 532 (9th Cir. 2008).

The Court has insufficient information to conclude that amendment is futile due to the sparsity of allegations in the Complaint.  Amendment would allow Plaintiffs to clearly identify the causes of action, what alleged wrongful acts occurred, and which defendant took what action.  Further, it does not appear amendment would cause undue delay at this juncture.  Accordingly, Plaintiffs will be given an opportunity to file an amended complaint that cures the deficiencies identified in this order. *See Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000).  On the other hand, it appears that due to the applicable statutes of limitations for defamation and the FDCPA, any actions taken prior to May 12, 2020 are time-barred.  Therefore, if Plaintiffs amend these causes of action, they may only address actions taken after May 12, 2020.

An amended complaint must bear the docket number assigned this case and must be labeled "First Amended Complaint."  Plaintiffs are advised that an amended complaint supersedes the original complaint. *Forsyth v. Humana, Inc*., 114 F.3d at 1474; *King v. Atiyeh*, 814 F.2d at 567.  After the First Amended Complaint is filed, the prior pleadings no longer serve any function in the case. *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  The amended complaint must be "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.  Accordingly, the Court will not again refer to either the initial complaint or the exhibits attached thereto to evaluate the sufficiency of the pleadings.

## V. Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1. Defendants' motion to dismiss (Doc. 5) is **GRANTED**;
2. Plaintiffs' complaint is **DISMISSED** with leave to amend; and
3. Plaintiffs are directed to file a First Amended Complaint within thirty days of the date of service of this order.

**If Plaintiffs fail to file an amended complaint, the action will be dismissed for failure to prosecute and failure to obey the Court's order.**

IT IS SO ORDERED.

Dated: **March 4, 2022**

_Jennifer L. Thurston_
UNITED STATES DISTRICT JUDGE