**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BYRON ARNOLD and KIMBLY ARNOLD, | Case No.: 1:21-cv-1182 JLT SKO |
| Plaintiffs, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | (Doc. 18) |
| BAY FINANCE COMPANY LLC, aka AQUA FIN., and QUANTUM 3 GROUP LLC, | ORDER DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE |
| Defendants. | |

Byron Arnold and Kimbly Arnold signed a purchase agreement for a water filter, for which they would make monthly payments. Plaintiffs assert the defendants acted unlawfully seeking to collect a debt related to the water filter and violated the Fair Credit Reporting Act. (*See* Doc. 15.)

Defendants[1] seek dismissal of the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting the facts alleged do not support the claims under the Fair Credit Reporting Act and an applicable statute of limitations bars the first claim for relief. (Doc. 18.) Plaintiffs oppose the motion, asserting the facts alleged are sufficient to give Defendants fair notice of their claims. (Doc. 20.) The Court finds the matter suitable for decision without oral arguments, and no hearing date will be set pursuant to Local Rule 230(g). For the reasons set forth below, the motion to dismiss is **GRANTED**, and the First Amended Complaint is dismissed without leave to amend.

---

[1] Defendants assert Aqua Finance, Inc. and the Bay Finance Group, Inc. are separate entities, which were erroneously identified by Plaintiffs as "Bay Finance Company LLC aka Aqua Fin." (Doc. 18 at 1; *see also* Doc. 5 at 1.)

1

## I. Background and Procedural History

Plaintiffs purchased a water filtration system from AquaPro Elite Systems for $5990.00 on February 12, 2016.[2] (*See* Doc. 1 at 14.) In exhibits attached to the initial complaint, which include a sales contract, it appears Plaintiffs were informed AquaPro Elite Systems may assign the contract to Aqua Finance, Inc. (*Id.*) Plaintiffs assert Bay Finance informed Bryon Arnold that the loan was transferred to Aqua Finance on March 1, 2016. (Doc. 14 at 5, ¶ 14.)

On May 10, 2016, Plaintiffs filed for Chapter 13 bankruptcy. (Doc. 15 at 5, ¶ 15.) Plaintiffs allege they were informed the acting agent for Quantum 3 Group LLC "filed proof of claim for the secure amount of $5,926.66 and unsecured amount $5,917.00." (*Id.*) Plaintiffs allege in the FAC that they "paid $47,803.25 on all debt secured and unsecured under the Chapter 13 earned payment plan" from July 1, 2016 to January 3, 2018.[3] (*Id.*, ¶ 16.) However, court records from Plaintiffs' bankruptcy action, Case No. 16-90571, indicate their payments were "delinquent in the amount of $6,750.00" as of September 5, 2017. (*See* Doc. 18 at 39.) The Court dismissed the bankruptcy action after Plaintiffs failed "to cure the default by payment" on October 30, 2017. (*Id.* at 43.) The final report of the Chapter 13 Trustee indicated no amount was paid on the claims of Quantum 3 prior to the dismissal. (Doc. 18 at 46.)

On January 11, 2018, Kimbly Arnold's application for a loan for a purchase of an automobile was denied. (Doc. 14 at 8, ¶ 35.) Plaintiffs contend the "negative marks on the Plaintiff (sic) credit … was the proximate cause for the Plaintiff being unable to purchase the automobile due to 'collection action.'" (*Id.*) Plaintiffs allege Ms. Arnold wrote to Equifax on August 2, 2018 to request an investigation within 45 days, but did not receive a reply. (*Id.* at 8-9, ¶ 35.) Thus, Plaintiffs assert "incorrect information remained unverified." (*Id.* at 9, ¶ 35.)

On April 25, 2019, Plaintiffs applied for a home loan. (Doc. 14 at 5, ¶ 19.) Plaintiffs assert the loan "was denied due to 'serious lates' (sic)." (*Id.*) Plaintiffs believe a consumer report from Experian reflected an unidentified "Defendant reporting collection." (*Id.*) Plaintiffs contend the report

---

[2] In the FAC, Plaintiffs allege the water filtration system cost $59990.00. (Doc. 14 at 4, ¶ 12.) This appears to be a typographical error because the sales agreement indicates the price was $5990.00. (Doc. 1 at 14.)

"contained derogatory and inaccurate" information, including that "Plaintiffs had an unpaid debt that did not belong to the Plaintiff by Connex Credit located at the Defendants Bay Finance." (*Id.*, ¶ 20.) According to Plaintiffs, "this incorrect reporting was caused by Defendant's failure to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and consumer files it publishes and maintains…." (*Id.* at 5-6, ¶ 21.)  Further, Plaintiffs allege "Defendant Bay Finance and Aqua Finance collectively furnishing inaccurate information to the Credit Reporting Agencies which contained incorrect information would most likely have an adverse effect upon Plaintiff's loan approval." (*Id.* at 6, ¶ 25.)

Plaintiffs allege that in December 2019, "Defendant Bay Finance took the position [that the company was] not willing to resolve the matter." (Doc. 14 at 9, ¶ 38.)  Plaintiffs contend Bay Finance declined to resolve "ownership of the account" the collection account, or past due status. (*Id.*)  Instead, Bay Finance indicated it "sold the account to Aqua Finance and was no-longer in possession of the account…." (*Id.*)

Plaintiffs assert that on March 12, 2020, "Defendant Quantum 3 Bankruptcy Service … placed a UCC-1 lien" on their property located at 1611 Carlton Ave, Modesto, Ca. (Doc. 14 at 9, 12, ¶¶ 37, 47.) Plaintiffs contend that by placing the lien, "Quantum 3 Bankruptcy Servicer violated the automatic stay with an order from the U.S.C of the Eastern District." (*Id.* at 9, ¶ 37.)  In addition, Plaintiffs allege this caused Atlas Capital Group "to terminate their decision to issue the funds which… caused irreparable financial hardship" to Plaintiffs. (*Id.* at 12, ¶ 47.)

On May 12, 2021, Plaintiffs filed a complaint in Stanislaus County Superior Court, Case No. SC21000387, seeking to hold the defendant liable for defamation, violations of the Fair Debt Collection Practices Act, and unlawful "attempts to collect a debt." (Doc. 1 at 6.)  Defendants filed a notice of removal on August 5, 2021, thereby initiating the matter before this Court. (Doc. 1.)  The Court granted Defendants' motion to dismiss the complaint, and granted Plaintiffs leave to amend. (Doc. 13.)

In the First Amended Complaint, Plaintiffs seek to hold the defendants liable for violations of the Fair Credit Reporting Act and a violation of the bankruptcy stay pursuant to 11 U.S.C. § 362(a). (Doc. 14.)  In response to the FAC, Defendants filed the motion to dismiss now pending before the

Court on April 19, 2022. (Doc. 18.) Plaintiffs filed an opposition on May 17, 2022 (Doc. 20), to which Defendants filed a reply on May 20, 2022 (Doc. 21).

**II.      Motion to Dismiss**

A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In evaluating a motion to dismiss under Rule 12(b), "review is limited to the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Coils, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citation, internal quotation marks omitted).

Dismissal of a claim under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). The Supreme Court explained: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations omitted). Allegations of a complaint must be accepted as true when the Court considers a motion to dismiss. *Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740. (1976). A court must construe the pleading in the light most favorable to the plaintiff and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). However, legal conclusions need not be taken as true when "cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003).

"The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The Court "will dismiss any claim that, even when construed in the light most favorable to

plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). To the extent pleading deficiencies can be cured by the plaintiff alleging additional facts, leave to amend should be granted. *Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

### III.     Request for Judicial Notice

Fed. R. Evid. 201 permits a court to take judicial notice of any facts (1) "generally known within the trial court's territorial jurisdiction" or (2) that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

Defendants request the Court take judicial notice of the following:

> A. Plaintiffs' complaint filed in Stanislaus County Superior Court on May 12, 2021 in Case No. SC21000387.
>
> B. The Notice of Default and Intent to Dismiss Case filed on September 6, 2017 by Chapter 13 Trustee Russell Greer in the case of *In re Arnold*, Eastern District of California Bankruptcy Court Case No. 16-90571;
>
> C. The Chapter 13 order Dismissing Case Re: Notice of Default and Intent to Dismiss Case entered on October 30, 2017 in the case of *In re Arnold*, Eastern District of California Bankruptcy Court Case No. 16-90571;
>
> D. The Chapter 13 Standing Trustee's Final Report and Account filed on January 3, 2018 by Chapter 13 Trustee Russell Greer in the case of *In re Arnold*, Case No. 16-90571; and
>
> E. The UCC-1 financing statement filed on October 30, 2019 in the official records of Stanislaus County.

(Doc. 18 at 16.) Plaintiffs do not oppose the request for judicial notice and do not challenge the accuracy of the identified documents. (*See generally* Doc. 20.)

The Court may take judicial notice of its own files and of documents filed in other courts. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). While a court may take judicial notice of state proceedings, a court may only take judicial notice the "of representations having been made therein." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 973-974 (E.D. Cal. 2004). Thus, the Court **GRANTS** the request for judicial notice of the allegations made in the

complaint filed by Plaintiffs but limits the scope of its judicial notice to the allegations made and declines to take judicial notice of the veracity of the allegations.

In addition, "the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable." *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004); *see also Reusser v. Wachovia Bank, N.A.,* 525 F.3d 855, 857 n.1 (9th Cir. 2008) ("We take judicial notice of the bankruptcy court order, because it is a matter of public record"); *Lane v. Vitek Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1097 (E.D. Cal. 2010) (taking judicial notice of court documents relating to a plaintiff's bankruptcy proceedings). Accordingly, the Court **GRANTS** the request for judicial notice of the Notice and Order issued in Case No. 16-90571. Similarly, the Court **GRANTS** the request for judicial notice of the "Trustee's Final Report and Account" filed in Case No. 16-90571. *See, e.g., Schwarm v. Craighead*, 2011 WL 1232837, at *1 n.2 (E.D. Cal. Mar. 31, 2011) (taking judicial notice of a trustee's final report in a bankruptcy action).

Finally, the Court **GRANTS** the request for judicial notice of documents in the official records of the county, such as the UCC-1 statement filed on October 30, 2019. *See, e.g., Christopherson v. All Pure Pool Serv. of Cent. Cal.*, 2020 WL 3249323, at *5 n.7 (E.D. Cal. June 16, 2020) (taking judicial notice of a recorded UCC financing statement); *see also Qingdao Tang-Buy Int'l Imp. & Exp. Co. v. Preferred Secured Agents, Inc.,* 2015 WL 7776331, at *2-3 (N.D. Cal. Dec. 3, 2015) (taking judicial notice of UCC-1 financing statements, noting the plaintiff did not challenge the authenticity of the documents, but declining to take notice of the facts contained in the statements). Accordingly, the Court takes judicial notice of the UCC-1 filed on October 30, 2019 but limits its scope to the date of the filing and not the veracity of the information contained in the statement.

**IV.     Discussion and Analysis**

Defendants seek dismissal of all claims in the FAC, asserting the allegations are insufficient to comply with the notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. (Doc. 18 at 10.) Defendants argue Plaintiffs fail to allege facts sufficient to state plausible claims, and the first cause of action also fails as barred by the applicable statute of limitations. (*Id.* at 11-15.)

///

**A.     Rule 11**

As an initial matter, Defendants contend the FAC should be stricken for failure to comply with Rule 11 of the Federal Rules of Civil Procedure.  (Doc. 18 at 2, n.1.)  Pursuant to Rule 11(a), "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented."  Fed. R. Civ. P. 11(a).  "The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention."  *Id.*; *see* also 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1333 (3d ed. 2004) (explaining the signature requirement of Rule 11 "is not satisfied when a non-lawyer signs a paper on behalf of an unrepresented party").

Defendants contend the FAC should be stricken because there are two named plaintiffs—Byron Arnold and Kimbly Arnold—and only Ms. Arnold signed the pleading.  (Doc. 18 at 2, n. 1.)  Defendants argue that Mr. Arnold's failure to sign the FAC violates Rule 11 of the Federal Rules of Civil Procedure.  (*Id.*)  Plaintiffs argue the motion should be denied on these grounds, because "Kimbly Arnold['s] signature is clearly sufficient for the Defendant to claim a defense."  (Doc. 20 at 5.)

Significantly, pro se litigants do not have authority to represent anyone other than themselves. *See C.E. Pope Equity Trust v. United States*, 818 F.2d 696, 697 (9th Cir. 1987) (holding a pro se litigant may not appear as attorney for others).  As a result, a pro se plaintiff "lacks the representative capacity to file motions and other documents on behalf of the other plaintiffs."  *Trevizo v. Webster*, 2018 WL 5917858, at *3 (C.D. Cal. Sept. 6, 2018) (citation omitted); *see also Christian v. Pittsburg Police Dep't*, 2009 WL 1631809 (N.D. Cal. June 9, 2009) (dismissing the claims of a pro se plaintiff who did not sign a complaint).  Thus, even the signature of a spouse does not satisfy Rule 11.  *See, e.g., Ko v. Mut. Pharm. Co., Inc.,* 2013 WL 3338596, at *2 (N.D. Cal. July 1, 2013) (finding the signature of the plaintiff's husband "[did] not satisfy the signature requirement of Rule 11(a)"); *see also Barker v. Default Resolution Network*, 2008 WL 4065879, n.2 (N.D. Cal. Aug. 27, 2008) ("a non-attorney is not permitted to represent the interests of another person in federal courts, and Kenneth, who is not an attorney, may not represent the interests of Lois pro se").  Consequently, Ms. Arnold is unable to sign the FAC on behalf of her husband, and the signature of Ms. Arnold fails to satisfy the requirements of Rule 11(a).  Because Byron Arnold did not sign the FAC—and Plaintiffs did not promptly cure the

7

defect—the FAC must be stricken. *See* Fed. R. Civ. P. 11(a). Although leave to amend may be granted to correct such an error, for the reasons set forth below, the Court finds dismissal without leave to amend is appropriate.

### B. Claims under the Fair Credit Reporting Act

The purpose of the Fair Credit Reporting Act is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA regulates credit reporting agencies to guarantee that consumer information is assembled, evaluated, and disseminated with "fairness, impartiality, and a respect for the consumer's right to privacy." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting 15 U.S.C. § 1681(a)(4)). Accordingly, the FCRA imposes duties on the credit furnishers, which are the sources that provide information to credit reporting agencies, to ensure accurate credit reporting. *See id.* (citing 15 U.S.C. § 1681s-2).

Two categories of responsibilities are placed upon credit furnishers in the FCRA, as set forth in 15 U.S.C. §1681s-2. Subsection (a) addresses the "duty to provide accurate information" to credit reporting agencies. 15 U.S.C. § 1681s-2(a); *see also Gorman*, 584 F.3d at 1154. Subsection (b) outlines a furnisher's duty to investigate after receiving notice of a dispute regarding credit-related information from a credit reporting agency. 15 U.S.C. § 1681s-2(b); *see also Gorman*, 584 F.3d at 1154 (citing 15 U.S.C. §§ 1681s-2(b), 1681i(a)(2)).

#### 1. Claims under subsection (a)

With "Claim I," Plaintiffs seek to hold Defendants liable for failure to provide accurate information, noting that under the FCRA, a furnisher is prohibited "from furnishing any information relating to a consumer to any consumer reporting agency if the furnisher knows or has reasonable cause to believe that the information is inaccurate." (Doc. 14 at 7, citing 15 U.S.C. § 1681s-2(a)(1)(A).) With "Claim II," Plaintiffs seek to hold Defendants liable under Section 1861 for failing to comply with the "duty to correct and update information." (Doc. 14 at 8, emphasis omitted.)

As Plaintiffs observe, the FCRA requires a furnisher to not provide information if it "knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). Subsection (a) also imposes the duty upon furnishers "to correct and update" information provided to a

credit reporting agency that was inaccurate or incomplete. *Id.*, § 1681s-2(a)(2). Importantly, however, the FCRA does not provide a private right of action under Section 1681s-2, subsection (a) for failure to provide accurate information. *Gorman*, 584 F.3d at 1154. Rather, "[d]uties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies." *Id.*, citing 15 U.S.C. 1681s-2 ("[Section] 1681s-2 limits this private right of action to claims arising under subsection (b), the duties triggered upon notice of a dispute from a CRA"); *see also Nash v. Wachovia Bank*, 2016 WL 4771027, at *5 (E.D. Cal. Sept. 14, 2016) (observing "there is no private right of action against a furnisher under subsection (a) of § 1681s-2" and recommending dismissal of the claim under the FCRA), *adopted by* 2016 WL 8731365 (E.D. Cal. Sept. 30, 2016); *see also Heras v. Capital One Bank USA, N.A.*, 2017 WL 7806364, at * 2 (C.D. Cal. Aug. 7, 2017) ("It is well-settled … that there is no private right of action for violations of § 1681s-2(a).").

Because Plaintiffs are private parties, they are unable to bring claims for violations under subsection (a) to enforce the duty to provide accurate information, including the obligation to correct and update information to a credit reporting agency. *See Gorman*, 584 F.3d at 1154; *Nash*, 2016 WL 4771027, at *5. Accordingly, to the extent Claim I and Claim II are based upon duties identified in subsection (a), the claims are **DISMISSED**.

### 2. Claims under subsection (b)

The FCRA provides a private right of action for claims arising under subsection (b). *See Gorman*, 584 F.3d at 1154. To the extent Plaintiffs seek to state a claim under subsection (b), the duties under this subsection are triggered upon notice from a CRA that the consumer disputes information that the furnisher provided. 15 USCS § 1681s-2(b); *see also Gorman*, 584 F.3d at 1154. In particular, after receiving such a notice, a furnisher must:

  (A) conduct an investigation with respect to the disputed information;

  (B) review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [15 USCS § 1681i(a)(2)];

  (C) report the results of the investigation to the consumer reporting agency;

  (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

9

> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>
> > (i) modify that item of information;
> > (ii) delete that item of information; or
> > (iii) permanently block the reporting of that item of information.

15 USCS § 1681s-2(b)(1). The private cause of action can be alleged as either "willful or negligent noncompliance" with these requirements. *Rara v. Experian Info. Sols., Inc.*, 2017 WL 1047020, at *3 (N.D. Cal. Mar. 20, 2017). To state a cognizable claim under subsection (b), plaintiffs must allege they: (1) found an inaccuracy in their credit report; (2) notified a credit reporting agency of the inaccuracy; (3) the credit reporting agency in turn notified the furnisher of the dispute; and (4) "the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. § 1681s-2(b)(1)(A)-(E)." *Biggs v. Experian Info. Sols., Inc.*, 209 F. Supp. 3d 1142, 1144 (N.D. Cal. 2016).

Plaintiffs allege Ms. Arnold wrote to Equifax—a credit reporting agency—regarding the information they believed to be inaccurate on August 20, 2018. (Doc. 14 at 8, ¶ 35.) In addition, Plaintiffs assert they requested an investigation within 45 days of the receipt by Equifax, but she "did not receive a reply." (*Id.* at 8-9, ¶ 35.) As Defendants observe, in the letter to Equifax, Plaintiffs did not identify any inaccuracies related to the water filter purchase or dispute information reported by defendants Bay Finance, Aqua Finance, or Quantum 3. (Doc. 18 at 13, n. 5, citing Doc. 14 at 29-30.) In the letter, which was attached as an exhibit to the FAC, Ms. Arnold indicated there were errors related to "Loan Care" and student loan accounts with Navient. (Doc. 14 at 29-30.) Thus, it is unclear that Plaintiffs notified a credit reporting agency of the inaccuracies now alleged. Moreover, there are no allegations supporting a conclusion that a credit reporting agency notified Defendants of the alleged inaccuracies. Without such notice from a credit reporting agency, no duty to investigate was triggered under the FRCA. *See* 15 U.S.C. § 1681s-2(b); *see also Mehl v. Green*, 2022 WL 4056269, at *4 (E.D. Cal. Sept. 1, 2022) (finding the allegations insufficient where the plaintiffs failed to "allege that a CRA provided defendants with a notice of a dispute, which is required to trigger the statutory duties under § 1681s-2(b)"); *Ewing v. Wells Fargo Bank*, 2012 WL 4514055 at *4 (D. Ariz. Oct. 2, 2012) (dismissing

a FCRA claim for failure to allege that the reporting agency sent notice of the plaintiff's consumer dispute to the defendant). Given the pleading insufficiency, to the extent Claim I and Claim II are based upon duties identified in subsection (b), the claims are **DISMISSED**.

### 3. Timeliness of the claims

Under the FCRA, a plaintiff must file a lawsuit "not later than the earlier of— (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. Defendants argue a claim under the FCRA is time-barred due to the applicable statute of limitations. (Doc. 18 at 11.)

Defendants contend that based upon the allegations in the FAC, "Plaintiffs had discovered the allegedly inaccurate credit reporting by January 11, 2018 or, at the latest April 25, 2019." (Doc. 18 at 11.) Specifically, Defendants observe: "The FAC states that Plaintiffs discovered the allegedly inaccurate reporting for the first time on January 11, 2018 when Plaintiffs' application for an automobile loan was denied as the result of the allegedly negative credit reporting subject of this action." (*Id*, citing FAC ¶ 35 [Doc. 14 at 8].) Defendants note Plaintiffs also allege they "applied for and were denied a home loan, again as the result of the credit reporting subject of this action" on April 25, 2019. (*Id.*, citing FAC ¶ 19 [Doc. 14 at 5].) Plaintiffs do not address the timeliness of the claim following their discovery of the alleged violations. (*See generally* Doc. 20 at 1-6.)

Plaintiffs' allegations support a conclusion that they were aware of the negative credit reporting as of 2018. Indeed, Plaintiffs allege Ms. Arnold wrote to Equifax concerning the alleged inaccuracies on August 20, 2018. (Doc. 14 at 8-9, ¶ 35.) Moreover, Plaintiffs do not dispute their knowledge of the violations at that time the letter was written. Accordingly, any civil action under the FCRA must have been filed within two years of the date of letter, or no later than August 20, 2020. *See* 15 U.S.C. § 1681p. Because Plaintiffs initiated this action by filing a complaint on May 12, 2021, their claims under the FCRA are untimely and fail as a matter of law.

### B. Violation of Bankruptcy Stay

With "Claim III," Plaintiffs seek to hold Defendant Quantum 3 liable for violating the automatic stay provision of bankruptcy proceedings as provided in 11 U.S.C. § 362(a). (Doc. 14 at 10.) When a

debtor files a petition for bankruptcy, an automatic stay comes into effect, preventing "the commencement or continuation … of a judicial, administrative, or other action or proceeding against the debtor … to recover a claim against the debtor that arose before the commencement of" the bankruptcy case. 11 U.S.C. § 362(a)(1). In addition, the automatic stay prohibits "any act to create, perfect, or enforce any lien against property of the estate" and "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(4)-(5). This automatic stay continues until the bankruptcy case is either closed or dismissed, or until a discharge is granted or denied, whichever comes first. 11 U.S.C. § 362(c).

Plaintiffs contend that on March 12, 2020, Quantum 3 "placed a UCC-1 lien" on their property, and by doing so, Quantum 3 "violated the automatic stay." (Doc. 14 at 9, 12 ¶¶ 37, 47.) Importantly, however, it is undisputed that Plaintiff's bankruptcy action was dismissed on October 30, 2017. (Doc. 18 at 43.) The dismissal of the bankruptcy proceedings immediately terminated the stay on October 30, 2017. *See* 11 U.S.C. § 362(c)(2); *In re Weston*, 101 B.R. 202, 204-05 (Bankr. E.D. Cal. 1989) (holding the automatic stay ends "at the moment the order dismissing the case is entered on the docket"); *Pacifica Parks Apts. LLC v. U.S. Bank N.A.*, 2013 WL 5348072, at *3 (E.D. Cal. Sept. 20, 2013) ("[t]he automatic stay in bankruptcy terminates at the time the case is dismissed"). Because the filing of the lien occurred well after the bankruptcy proceedings were dismissed, Plaintiffs fail to show the action by Quantum 3 violated the automatic stay provisions of Section 362(a).

Moreover, although 11 U.S.C. § 362 provides for a private right of action, courts have indicated such claims must be brought before the bankruptcy court. *See MSR Exploration, Ltd. v. Meridian Oil, Inc.* 74 F.3d 910, 916 (9th Cir. 1996); *Eastern Equip. & Services Corp. v. Factory Point Nat. Bank,* 236 F.3d 117, 121 (2d Cir. 2001) (noting 11 U.S.C. § 362(h) "allows for the recovery of compensatory and punitive damages for willful violations of the automatic stay," but finding "such a claim *must* be brought in the bankruptcy court, rather than in the district court, which only has appellate jurisdiction over bankruptcy case" [emphasis in original].) Accordingly, Plaintiffs are unable to seek relief from this Court for any alleged violation under Section 362. For this reason, the claim is **DISMISSED**.

///

### V. Dismissal Without Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (alterations, internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (internal quotation marks omitted). Any amendment would be futile, as defects identified above may not be cured by the pleading of additional facts. Therefore, the Court finds dismissal without leave to amend is appropriate.

### VI. Conclusion and Order

For the reasons set forth above, the Court **ORDERS**:

1. Defendants' motion to dismiss (Doc. 18) is **GRANTED**.
2. Plaintiffs' First Amended Complaint is **DISMISSED** without leave to amend.
3. The Clerk of Court is directed to enter judgment in favor of Defendants and to close this action.

IT IS SO ORDERED.

Dated: **February 17, 2023**                         /s/ Jennifer L. Thurston
                                                    UNITED STATES DISTRICT JUDGE